IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PETER WHYTE,

                Plaintiff,                        ORDER

    v.

                                                     12-cv-145-wmc

KYLE MAGNUS and BOB BRADFORD,

                Defendants.

---

In this proposed civil action for monetary and injunctive relief brought pursuant to 42 U.S.C. § 1983, plaintiff Peter Whyte, currently a prisoner at the Waupun Correctional Institution, contends that defendants Kyle Magnus and Bob Bradford violated his rights under the Fifth Amendment by interrogating him without obtaining a valid waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendants have moved for summary judgment. After considering the parties' proposed findings of fact, along with electronic court records[1] and applicable law, the court will grant defendants' motion to the extent it seeks the court's abstention. The case will be stayed pending the resolution of Whyte's criminal proceedings.

---

[1] *See, e.g., U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (noting that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

FACTS[2]

A.     Pre-Arrest Interviews

On August 20, 2006, Suzanne Weiland died following an altercation with the plaintiff here, Peter Whyte. Investigators for St. Croix County Sheriff's Department, defendants Kyle Magnus and Robert Bradford, questioned Whyte about Weiland's death on August 21, 2006. The interviews were conducted at Regions Hospital in St. Paul, Minnesota, following Whyte's surgery for injuries he sustained during the altercation. Whyte was provided *Miranda* warnings during the first interview, although he reports being heavily medicated, in pain and shock, and confined to his bed at this time. Defendants state that the interviews occurred in a public hospital with medical staff coming and going. Whyte was not under guard, was not in a secure ward of the hospital and was able to immediately recall the correct date.

After being given the *Miranda* warnings, Whyte stated, " I don't think I want to do anything because I don't know what happened," "I'm not gonna say anything, cause I don't know," and in response to the statement asking him to confirm that he was refusing to talk

---

[2] In reply, defendants object to most of Whyte's proposed findings of fact as supported by nothing more than an unsworn, unnotarized affidavit. Whyte subsequently filed a motion for leave to file a sur-reply to defendants' motion for summary judgment, in which he includes a notarized affidavit. While it is unclear whether Whyte seeks to provide a sur-reply in addition to the notarized affidavit, or whether the affidavit constitutes the sur-reply, that motion will be denied as moot because the court's decision does not depend on nuances of fact regarding the homicide or the criminal trial proceedings. Facts from Whyte's notarized affidavit are, however, included in this fact section to the extent they clarify the narrative, which is written to resolve all disputes of fact and reasonable inferences in Whyte's favor as the non-moving party.

further, he stated " I think, I don't know."[3] Whyte nevertheless continued the conversation, talking about how "the family" was doing. Defendant Magnus assured Whyte that he was not under arrest. Whyte then went on to say that "Someone attacked us or something – look at me" and "I don't believe Sue or I did anything to each other."

On their way out of the hospital, Magnus and Bradford were stopped by a guard and told that Whyte wanted them to return to talk to him. The defendants returned for a second interview, in which Whyte said that "there could be something on some drug connection here."

After a mid-day break, Magnus and Bradford returned to talk to Whyte for a third time. They informed Whyte that he was not under arrest, and Whyte agreed to continue talking. Whyte was arrested several days after these interviews and state criminal proceedings followed.

### B. State Court Proceedings

On May 4, 2007, Whyte filed a motion to suppress the three interviews with Magnus and Bradford, asserting that his statements were involuntary and made without proper *Miranda* warnings. The state and Whyte stipulated to the circuit court considering the voluntariness issue first. A motion to suppress was heard on May 24, 2007, with a continued hearing on June 4, 2007. That court ultimately issued an opinion on August 6,

---

[3] Whyte characterizes these statements as invoking his right to remain silent, explaining that he ultimately continued to talk only because defendants refused to leave and he could not understand what defendants had just said, and he was trying to confirm what was said.

2007, concluding that Whyte's statements in the three interviews with Magnus and Bradford were all voluntary and denying Whyte's motion to suppress.

Following this ruling, Whyte's trial counsel proposed a stipulation regarding the use of the interview statements for purposes of trial. Specifically, Whyte proposed that the state be permitted to use the first and third interviews in its case-in-chief, and use the second interview only in rebuttal and in cross-examination. The state agreed to the stipulation, which was confirmed on the record during an August 28, 2007, motion hearing.

The interview statements were introduced at trial consistent with the parties' stipulation. Whyte did not object. Whyte's theory of defense was that he acted in self-defense against Weiland's attack. Whyte testified before the jury that not everything he said in the interviews was true. The jury found Whyte guilty of second-degree intentional homicide. The formal judgment of conviction was entered on November 12, 2007.

Whyte filed a notice of appeal on May 12, 2009, challenging the admission of his interview statements into evidence. The Wisconsin Court of Appeals issued its decision affirming the judgment of conviction on October 26, 2010. The Wisconsin Supreme Court and United States Supreme Court both denied Whyte's petitions for review from that decision.

Whyte filed a motion for post-conviction relief in the St. Croix County Circuit Court on January 11, 2013. That motion was denied on March 19, 2013. He filed a motion for sentence modification on April 29, 2013, which was also denied on May 14, 2013. Whyte appealed both of these rulings to the Wisconsin Court of Appeals, where proceedings are currently pending.

## DISCUSSION

Defendants seek summary judgment on Whyte's claim that they violated his rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966), during his pre-arrest interviews. Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The district court's function in reviewing a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter," but simply to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Factual disputes are genuine 'only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented,' and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (quotation omitted).

In determining whether a genuine issue exists, the court must construe all facts in the light most favorable to Whyte as the nonmoving party, drawing all reasonable inferences in his favor. *See, e.g., Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). Even so, Whyte may not simply rest on "mere allegations or denials in [his] pleadings[.]" *Serendnyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2013). Rather, he must "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hunter v. Amin*, 583 F.3d 486, 490 (7th Cir. 2009) (quoting *Hemsworth v.*

*Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007)). This he cannot do, at least not yet.

## I. Possible Application of *Heck v. Humphrey* Bar

Defendants argue that Whyte's Fifth Amendment claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars a § 1983 suit seeking to recover damages "for harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff proves that the conviction or sentence has already been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486–87. On the other hand, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (emphasis in original).

A Fifth Amendment claim does not necessarily undermine the validity of a conviction. *Edmonson v. Desmond*, 2013 WL 3200662, *3 (E.D. Wis. June 24, 2013); *see also Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) ("Because harmless error analysis is applicable to the admission at trial of coerced confessions, judgment in favor of Simmons on this § 1983 action challenging his confession will not necessarily demonstrate the invalidity of his conviction"); *cf. Heck*, 512 U.S. at 487 n.7. "Because of doctrines like independent source and inevitable discovery, and especially harmless error, . . . a § 1983 action, even if

6

successful, would not necessarily imply that the plaintiff's conviction [following allegedly unreasonable search] was unlawful"; *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004) ("It is true that a conviction can often stand, despite the fact that police may have obtained evidence without probable cause or a warrant in violation of the Fourth Amendment. The availability of other evidence to support a conviction or, as the Court itself noted in *Heck*, the applicability of the inevitable discovery and independent source doctrines, which allow the use of evidence even though it was illegally obtained, make such an outcome more than a possibility.").

Based on the current record presented by the parties in their proposed findings of fact and supporting documents, it is unclear whether Whyte's conviction would *necessarily* be undermined by the use of his statements at trial. While the parties do not present the entire record of the trial, it seems possible (based on physical evidence from the crime scene or other evidence) that Whyte could have been convicted regardless of the shifting narrative between his pretrial statements and self-defense rationale at trial. Therefore, summary judgment cannot be granted based on *Heck*.

## II. *Younger* Abstention

In the alternative, defendants ask the court to abstain from deciding this case under the *Rooker-Feldman* doctrine.[4] Named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), this doctrine holds

---

[4] Defendants raise a host of other arguments for why they should be granted summary judgment, but the court need not consider them.

that federal courts other than the United States Supreme Court have no jurisdiction to review state-court judgments, even for unconstitutionality, unless Congress has expressly authorized them to do so. Whatever merit there may or may not be to this argument, this court is bound to reject it in light of the Seventh Circuit's holding that the *Rooker-Feldman* doctrine does not apply to situations like this. In *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), the court explained that such broad application of the *Rooker-Feldman* doctrine "would be inconsistent with cases in which, for example, police officers are sued under 42 U.S.C. § 1983 for having fabricated evidence that resulted in the plaintiff's being convicted in a state court." *Id*. at 1005; *see also Nelson v. Murphy*, 44 F.3d 497, 503 (7th Cir. 1995) ("Plaintiffs avoid [the *Rooker-Feldman* doctrine], however, because they challenge [an underlying constitutional violation by state officials] independently of the courts' approval of that [violation].")

Nevertheless, defendants' argument, along with proposed findings indicating that Whyte is currently pursuing post conviction relief, leads the court to conclude abstention is appropriate under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* requires a federal district court to refrain from interfering with pending state criminal proceedings in deference to principles of equity, comity, and federalism.[5] *Id*. at 53. This doctrine applies to criminal appeals. *See Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995) ("Because an appeal of Simpson's conviction and death penalty sentence is currently pending

---

[5] Although the court rejects defendants' invocation of the *Rooker-Feldman* doctrine in support of their abstention argument, the court may still invoke *Younger* abstention *sua sponte*. *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996)

before the Illinois Supreme Court, the potential for federal-state friction is obvious"). For similar reasons, the doctrine presumably applies to post-conviction proceedings as well. *See, e.g., Smith v. Bravo,* 2000 WL 1051855, *5 (N.D. Ill. 2000) (presuming that *Younger* abstention would apply to civil case that could interfere with post-conviction proceedings); *Lockheart v. Chicago Police Dept.*, 1999 WL 639179, *2 (N.D. Ill. Aug. 17, 1999) ("This case is similar to *Simpson* in that there are ongoing state court proceedings concerning plaintiff's criminal case: plaintiff has filed a state post-conviction petition, which is currently pending.").

Inspection of Whyte's post-conviction motion in state court reveals that he raises the same or similar Fifth Amendment issues as here, at least with regard to his arguments that he received ineffective trial counsel and that the prosecutor committed misconduct. Given this, the court must abstain if Whyte's post-conviction proceedings are: (1) judicial in nature, (2) involve important state interests, (3) provide an adequate opportunity to raise the federal claims, and (4) present no exceptional circumstances that would make abstention inappropriate. *See Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007).

All four prongs of this test are met here. First, there is no question that the post-conviction proceedings are judicial in nature. The second requirement is met as "'the state proceeding implicates important state interests: the prosecution of alleged criminal activity, as well as the behavior of police officers in effectuating [searches].'" *Trevino v. Tittle*, 2009 WL 3153754, *4 (quoting *Robinson v. Lother*, 2004 WL 2032120, *6 (N.D. Ill. 2004)). Third, there is no reason to think that Whyte will be unable to raise the constitutional issues

presented here in the post-conviction, state court proceedings. Fourth, there are no extraordinary circumstances present to warrant an exception to the doctrine. *Cf. Brunken v. Lance*, 807 F.2d 1325 (7th Cir. 1986) (exceptions include a state proceeding motivated by a desire to harass, conducted in bad faith, or involving such extraordinary circumstances that the plaintiff will be irreparably injured if the federal court does not act).

To the extent defendants seek this court's abstention, their motion for summary judgment will be granted. Pursuant to *Simpson*, the case will be stayed until the conclusion of Whyte's pending state criminal proceedings, including any relevant state collateral review proceedings. The clerk of court will be directed to close the case, and Whyte may move to reopen this case when his criminal proceedings are completed.

## ORDER

IT IS ORDERED that:

(1) Plaintiff Peter Whyte's motion for leave to file a sur-reply to defendants' motion for summary judgment, dkt. 51, is DENIED as moot.

(2) Defendants' motion for summary judgment, dkt. 17, is GRANTED IN PART; the case is STAYED until the conclusion of plaintiff's pending state criminal proceedings, including any relevant state collateral review proceedings. The clerk of court is directed to close the case, subject to reopening upon notice by plaintiff of the completion of his state court collateral attack on his underlying conviction.

Entered this 19th day of July, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge